UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **KEZLYN MENDEZ** | : | **CIVIL NO. 3:18-CV-1929(VLB)** |
| **V.** | : | |
| **MULLIGAN, ET AL.** | : | **SEPTEMBER 16, 2019** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Now comes the defendants, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, and respectfully move for summary judgment as to all of the claims in the complaint on grounds that the undisputed material facts demonstrate that the defendants are entitled to judgment as a matter of law. As the attached Local Rule 56(a)(1) Statement of Material Facts, supporting documentation and affidavits demonstrate, there are no genuine issues of material fact in dispute that are sufficient to defeat summary judgment.

**I.    FACTS**

The pro se plaintiff commenced this action on November 28, 2018. ECF No. 1. On March 27, 2019, the plaintiff filed the operative, amended complaint. ECF No. 22. According to the plaintiff, the defendants subjected him to retaliation because he wrote a grievance, which resulted in him losing his kitchen job, being transferred to another facility and confined to a restrictive housing unit. ECF No. 19 ¶ 35. He has named Captain Rivera, Lieutenants Legassey and Harris, along with Correctional Food Services Supervisors "CFSS" Oliver, Rossi, Osle, Johnson, Rodriguez and Williams as defendants in this action.

The crux of the complaint stems from the plaintiff's employment as a kitchen worker at MacDougall Walker Correctional Institution.   The plaintiff started working in the kitchen in April of 2017.   *See* Local Rule 56 (a) Statement ¶ 1.  On May 12, 2017, the plaintiff was excused from work for medical reasons from that date until June 2, 2017.   ECF No. 1, Pg. 33.   As a scullery line worker, the plaintiff duties included preparing the serving trays, cleaning the trays that return from the unit and the dishwashing area, mopping the floors, and transporting food throughout the facility.   *See* Local Rule 56 (a) Statement ¶ 2.

The plaintiff's return to work was not without conflict.   On June 2, 2017, CFSS Rossi spoke with the plaintiff about his portion serving size, his handling of the food cart, his work ethic and overall attitude.   *See* Local Rule 56 (a) Statement ¶ 3.  The plaintiff was not receptive to CFSS Rossi's feedback but argumentative, with a fowl attitude.   It was apparent that Mendez would not modify his behavior to address CFSS Rossi's concerns.   CFSS Rossi found Mendez's conduct unacceptable.   *See* Local Rule 56 (a) Statement ¶ 4.  CFSS Rossi explained the job assignment duties multiple times but the plaintiff was unable to stay on task and complete his job responsibilities.   The plaintiff was unwilling to follow CFSS Rossi's direction.   Consequently, CFSS Rossi told the plaintiff to return to his housing unit.   *See* Local Rule 56 (a) Statement ¶ 5.   CFSS Rossi informed the plaintiff he would not write a bad work report so that the plaintiff would remain eligible to reclassify to another job.   *See* Local Rule 56 (a) Statement ¶ 6.

On June 8, 2017, Less than a week after he returned to the kitchen the plaintiff wrote to the Iman and inquired about where pork should be cooked.  ECF No. 1, Pg. 22.  The next day, in response to a question from the plaintiff about pork preparation the Chaplin wrote, "Food consumed by Muslims should not come in contact with pork or pork products…"  ECF No. 1, Pg. 22.

On June 22, 2017, the plaintiff filed a grievance and complained about pork being cooked in the kitchen, not being scheduled for work and requested to be moved to the second shift.  ECF No. 1, Pg. 12, 13.  The same day, on June 22, 2017, the plaintiff handed CFSS Rossi an apology letter.  *See* Local Rule 56 (a) Statement ¶ 7.  The apology letter took CFSS Rossi by surprise.  CFSS Rossi was relieved because the plaintiff assumed responsibility for his conduct.  CFSS Rossi believed that the plaintiff was sincere and accepted the apology.  *See* Local Rule 56 (a) Statement ¶ 8.   Defendant Rossi never posted the apology letter or discussed it with other inmate.  *See* Local Rule 56 (a) Statement ¶ 9.

Although the plaintiff apologized he remained confrontational with CFSS Rossi.   On July 30, 2017, CFSS Rossi went to the L-2 housing unit to speak with an inmate, not the plaintiff.  *See* Local Rule 56 (a) Statement ¶ 10.  As he was talking, the plaintiff attempted several times to walk behind him.  CFSS Rossi continued to direct his attention to the plaintiff, by facing Mendez, to prevent himself from being vulnerable.  *See* Local Rule 56 (a) Statement ¶ 11.  After, CFSS Rossi finished speaking with the other inmate, he addressed the plaintiff.  The plaintiff asked about not being able to work in the kitchen.  The plaintiff stated, "I do not back down from anyone and I am getting my job back! When I get my job

back, we are going to have problems in the kitchen." *See* Local Rule 56 (a) Statement ¶ 12. Less than a week after this incident, CFSS Oliver transferred the plaintiff to the second shift, on August 4, 2017. *See* Local Rule 56 (a) Statement ¶ 13.

In September of 2017, CFSS Rossi was notified that the plaintiff alleged that he was sexually inappropriate towards him and complained about him cooking pork in the kitchen. The plaintiff claimed that CFSS Rossi told him that he would be his bitch, which Mendez perceived as sexual harassment. *See* Local Rule 56 (a) Statement ¶ 14. CFSS Rossi wrote a statement on September 13, 2017 in response to the Inmate Request filed by the plaintiff about their interaction on July 30, 2017. *See* Local Rule 56 (a) Statement ¶ 15. On September 8, 2017, CFSS Rossi was contacted by Correctional Counselor Bennett, the Administrative Remedies Coordinator at MacDougall Walker Correctional Institution, and asked to prepare a written response to allegations by Mendez that he was prohibited from going to work after June 2, 2017 because he complained to the Warden about pork in the kitchen. *See* Local Rule 56 (a) Statement ¶ 16. This was the first time that CFSS Rossi heard about inmate Mendez writing to the Warden about pork being cooked in the oven. *See* Local Rule 56 (a) Statement ¶ 17. CFSS Rossi wrote a statement on September 14, 2017, that outlined everything that transpired on June 2, 2017 which led to inmate Mendez being asked to leave the kitchen. *See* Local Rule 56 (a) Statement ¶ 18.

October 4, 2017, the plaintiff was issued a disciplinary report by Lieutenant Diaz, who is not a party to this action. *See* Local Rule 56 (a) Statement ¶ 19. The

disciplinary report led to an investigation, which included statements from kitchen supervisors Rossi and Williams.  *See* Local Rule 56 (a) Statement ¶ 20. The plaintiff was subsequently placed in restrictive housing as a result of his behavior.  *See* Local Rule 56 (a) Statement ¶ 21.  Captain Paton recommended that the plaintiff remain in the restrictive housing unit and also be considered for a facility transfer.  *See* Local Rule 56 (a) Statement ¶ 22.

II.   ARGUMENT

A.  Standard of Review

The standard for granting a motion for summary judgment is well established. "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)*).  A moving party is entitled to summary judgment "if the pleading, the discovery and the disclosure of materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c)).  The burden of establishing that there is no genuine factual dispute rests with the moving party. *See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)*).  Summary judgment is properly viewed as a means to securing the just, speedy, and inexpensive determinations of any action. *Celotex v. Catrett, 477 U.S. 317, 327 (1986)*).

A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242,*

*248 (1986)*).   A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*   Any assertion that a fact cannot be or is genuinely disputed must be supported by citing materials in the record, including depositions, documents, affidavits, stipulations, admissions, interrogatories or other materials, or by showing the materials do not establish the presence or absence of the dispute. Fed. R. Civ. P. 56(c)).   The burden of demonstrating that no material fact exists lies with the party seeking summary judgment.  *See, e.g.,Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)*).   Even so, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Samuels v. Smith, 839 F. Supp. 959, 962 (D. Conn. 1993)*); see also, *Hemphill v. Schott, 141 F.3d 412, 416 (2d Cir. 1998)*) (disputed facts which are not material to the issue in the case may not defeat summary judgment).

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.  *Niagara Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003)*).   "The judge must ask . . . not whether . . . the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson, 477 U.S. at 252*2.   "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)*); *see*

*also, Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996)*) ("In applying the [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses.").  However, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *See Scott v. Harris, 550 U.S. 372, 380, 127 (2007)*); *Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)*).  *See also, Anderson, 477 U.S. at 2522* (The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson, 477 U.S. at 2566*. The non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts that give rise to a genuine dispute[1].  *Celotex, 477 U.S. at 324 (1986)*).  To defeat summary judgment, nonmoving parties "must do more than

---

[1] **Litigants in the District of Connecticut must comply with Local Rule 56, requiring a party opposing summary judgment to list each disputed material fact, and cite to admissible evidence in the record to support each disputed fact, or risk entry of summary judgment against them.  *See* D. Conn. L. Civ. R. 56.  Moreover, where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial.  *See First Nat'l Bank Co. of Clinton, Ill. v. Ins. Co. of N. Am.*, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay that does not fall under one of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. *See Adickes*, 398 U.S. 144; *Beyene v. Coleman Sec. Serv., Inc.* 854 F.2d 1179 (9th Cir. 1988); *Edwards B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941).**

simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)*), and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)*) (internal quotation marks omitted); *see also, Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992)*) (noting that summary judgment cannot be defeated on the basis of conjecture or surmise).  At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version is not wholly fanciful." *D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)*).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson, 477 U.S. at 249-250*0.

When Rule 56(e)) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial. *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987)*).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof, then summary judgment is appropriate." *Celotex, 477 U.S. at 323*3.  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id. at 322-23*3; accord *Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)*) (movant's

burden is satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).

### B. The Plaintiff Was Not Subjected to Retaliation.

A prisoner's claim that a prison official retaliated against his constitutionally protected speech or expressive conduct is generally analyzed under the First Amendment. To prove a First Amendment retaliation claim a prisoner must show that "(1) that the speech at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir.2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Plaintiff's claim of protected speech stems from a grievance that he filed on June 22, 2017. ECF No. 1 Pg. 12. Filing a grievance is a constitutionally protected activity and, therefore, can constitute the required protected conduct to support a retaliation claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Defendants do not dispute that such speech is protected under the First Amendment.[2] However, the facts do not establish an adverse action or any casual connection between his protected speech and the issuance of the work

---

[2] Defendants do not concede, generally, the content of the alleged protected speech of June 22, 2017, but for the purposes of this motion only accept what is alleged by Plaintiff.

report.   Because plaintiff cannot establish the second or third element of a
retaliation claim, summary judgment should enter for the defendants.

>    1.    The Plaintiff Was not Subjected to Adverse Action

The undisputed facts do not establish that the defendants took adverse
action towards the plaintiff.   According to the complaint, Rossi prevented the
plaintiff from attending work; Captain Legassey and Lieutenant Harris filed a
disciplinary report against the plaintiff and placed him the restrictive housing
unit; and Rivera had the plaintiff transferred.   Plaintiff provides no facts to
establish any of the alleged adverse actions or link between said action and the
alleged protected speech.   Absent an adverse action the plaintiff is precluded
from satisfying the legal requirement.

The Second Circuit defines "adverse action," in the prison context, as
"retaliatory conduct 'that would deter a similarly situated individual of ordinary
firmness from exercising ... constitutional rights.' " *Gill, supra, at 381* (quoting
*Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)). The test is an objective one, and
does not depend on whether the plaintiff himself was in fact deterred from
continuing to exercise his constitutional rights. *Id.*

The Second Circuit has observed that "[p]risoners may be required to
tolerate more than public employees, who may be required to tolerate more than
average citizens, before a [retaliatory] action taken against them is considered
adverse." *Dawes, supra* at 491 (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 398
(6th Cir.1999) (en banc) (per curiam)). If a retaliatory act against an inmate would
not be likely to "chill a person of ordinary firmness from continuing to engage" in

protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." Dawes, 239 F.3d at 493.

A plaintiff must prove that he or she suffered an adverse action of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *See Burns v. Martuscello*, 890 F.3d 77, 93-94 (2d Cir. 2018); *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

The first alleged adverse action at issue is the plaintiff's claim that CFSS Rossi prevented him from working because he filed a grievance.  The plaintiff argues that Rossi didn't call him to work in June, July and August because he complained about Rossi.  CFSS Rossi was not aware of the grievance until September 8, 2017, well after the plaintiff claims this defendant prevented him from working.  *See* Local Rule 56 (a) Statement ¶¶ 16, 17, 18.  Despite the plaintiff's conduct and attitude, CFSS Rossi decided not to issue the plaintiff a bad work report so that Mendez would remain eligible to reclassify to another job. *See* Local Rule 56 (a) Statement ¶ 6.  This is supported by CFSS3 Oliver's decision to transfer the plaintiff to the second shift on August 4, 2017.  *See* Local Rule 56 (a) Statement ¶ 13.  On October 14, 2017, the plaintiff again wrongfully blames Rossi because he wasn't called to work.  ECF No. 22 ¶ 48.  The plaintiff was upset about not going to work at 11 am.  However second shift reports to work at 1:00 pm.  *See* Local Rule 56 (a) Statement ¶¶ 21, 22.  The undisputed facts do not establish adverse action by Rossi.

Next, the plaintiff claims that Cpt. Legassey and Lt. Harris filed a disciplinary report against the plaintiff.  The plaintiff is well aware that none of the

named defendants issued him a disciplinary report. ECF No. 1 Pg. 39 and Local Rule 56 (a) Statement ¶ 19. On October 14, 2017, the plaintiff was issued a disciplinary report by Lt. Diaz because he was upset, yelling and demanding that a Lieutenant report to the L2 housing unit. ECF No. 1 Pg. 39 and Local Rule 56 (a) Statement ¶ 20. Mendez was upset because Rossi wouldn't allow him to come to work. ECF No. 1 Pg. 39 and Local Rule 56 (a) Statement ¶ 21. It was 11:00 am and the second shift kitchen work call did not start until after 1:00pm. ECF No. 1 Pg. 39 and Local Rule 56 (a) Statement ¶ 22. Recall, the plaintiff was reassigned to the second shift in August. *See* Local Rule 56 (a) Statement ¶ 13. Lt. Diaz issued the disciplinary report for Interfering with Safety and Security because Inmate Mendez's behavior interfered with her official duties while in the operations office. ECF No. 1 Pg. 39 and Local Rule 56 (a) Statement ¶ 23. Neither Cpt. Legassey nor Lt. Harris issued the plaintiff a disciplinary report, it was Lt. Diaz. There are no facts to establish that either Cpt. Legassey or Lt. Harris issued the plaintiff a disciplinary report that could be construed as an adverse action.

Then, the plaintiff claims that Cpt. Legassey and Lt. Harris wrongfully placed him the restrictive housing unit. The disciplinary report led to an investigation, which included statements from kitchen supervisors Rossi, Williams and Gandolfo. *See* Local Rule 56 (a) Statement ¶ 24. The plaintiff was subsequently placed in restrictive housing as a result of his own behavior. *See* Local Rule 56 (a) Statement ¶ 25. Captain Paton recommended that the plaintiff remain in the restrictive housing unit and also be considered for a facility transfer. *See* Local Rule 56 (a) Statement ¶ 26. Cpt. Legassey and Lt. Harris did

not make the final determination.  Moreover, the placement does not rise to the level of an adverse action.

The plaintiff has also alleged that Captain Rivera wrongfully transferred him out of MacDougall Walker Correctional Institution to Corrigan. ECF No. 22 ¶¶ 64, 65.  It is well established that "Inmates have no constitutionally protected right to be confined in any particular correctional facility or housing unit." *Olim v. Wakinekona,* 461 U.S. 238, 248-49 (1983); *Ziemba v. Thomas,* 390 F.Supp.2d 136, 153 (D.Conn.2005) (noting that Connecticut prison officials have broad discretion to transfer prisoners). Rather, "[c]onfinement in *any* of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano,* 427 U.S. 215, 225, (1976) (emphasis added); *accord McKune v. Lile,* 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").  Claims against defendant Rivera are misplaced.  Captain Rivera was not involved in the decision to transfer the plaintiff. *See* Local Rule 56 (a) Statement ¶ 27.   There is no evidence that Captain Rivera was involved.  The plaintiff filed evidence with the court, which establishes that Cpt. Paton made the recommendation to transfer the plaintiff to another correctional facility, not Rivera.  ECF No. 1 Pg. 38.  It is impossible for the plaintiff to establish that Cpt. Rivera took adverse action against him.

The facts do not establish that defendants Rossi, Legassey, Harris or Rivera took adverse action against the plaintiff.  The decisions made by Rossi occurred well before he knew the plaintiff filed a grievance against him.

13

Defendants Legassey and Harris did not issue the plaintiff a disciplinary report as he has alleged.  Captain Rivera never requested for the plaintiff to be transferred. The plaintiff is precluded from satisfying the legal requirement without adverse action.

### 2.    No causation

The plaintiff's grievance about Rossi was not the motivating factor for his work schedule, the disciplinary report, placement within the restrictive housing unit or his transfer.  Action was taken solely based on the plaintiff's own conduct, not that of the defendants.  The prisoner bears the burden of showing that "the protected conduct was a substantial and motivating factor in the prison officials' disciplinary decision." *Holland*, 758 F.3d at 225 (internal quotation marks omitted). In the present case, there are no factual allegations to show that plaintiff's work schedule, placement in restrictive housing or transfer to Corrigan was ordered in retaliation for his inquiries or grievances. *See, e.g., Gonzalez*, 363 F. Supp. 2d at 497 (granting summary judgment on retaliation claim because Plaintiff offered solely "conclusory allegations" regarding the reason for his transfer: "Plaintiff fails to demonstrate that his letter writing to outside officials was a substantial or motivating factor in defendants' decision to transfer him"). The plaintiff has only made "conclusory allegations" in an effort to create a nonexistent connection. Defendant Rivera is entitled to judgment as a matter of law.

### C. Claims Against Oliver, Osle, Williams, Rodriguez and Johnson Lack Merit

Claims against Kitchen Supervisors Oliver, Osle, Williams, Rodriguez and Johnson are unfounded and lack legal authority. The plaintiff alleged that he complained to these defendants on at least two occasions.  ECF No. 22 ¶¶ 19, 22. According to the plaintiff on unspecified dates and times, he shared concerns with Kitchen Supervisors Oliver, Osle, Williams, Rodriguez and Johnson and was rebuffed.  There is no detailed account of what was actually said between the plaintiff and each of these defendants.  The plaintiff admits that he made effort to write these defendants in furtherance of his concerns with Rossi.

Because vicarious liability is inapplicable to section 1983 suits, to prevail under the statute, a plaintiff must show that each defendant, through the official's own individual actions, violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (*per curiam* ) (requiring "more than the linkage in the prison chain of command").  A plaintiff may establish such personal involvement competent evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995);  *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).  The plaintiff also must demonstrate a causal link between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282

F.3d 123, 140 (2d Cir. 2002).  The only way the plaintiff can establish supervisory liability against any of the defendants is by showing that they failed to act in response to the plaintiff's complaints about Rossi.

The plaintiff put CFSS Oliver on notice and he took action.  The plaintiff talked to CFSS Oliver about his work schedule and problems on the first shift. *See* Local Rule 56 (a) Statement ¶ 29.  Oliver did not ignore the plaintiff, he moved Mendez to the second shift to alleviate the problem.  *See* Local Rule 56 (a) Statement ¶ 30.  Oliver did not violate the plaintiff's constitutional rights.

There is no evidentiary or legal authority to establish personal involvement by defendants Osle, Williams, Rodriguez and Johnson.   CFSS Osle was never approached by the plaintiff about inappropriate or retaliatory conduct by CFSS Rossi or a desire to move to the second shift.  *See* Local Rule 56 (a) Statement ¶ 31.  The plaintiff did not talk with CFSS Williams about Rossi or wanting to move to the second shift.   *See* Local Rule 56 (a) Statement ¶ 32.  The plaintiff did not contact CFSS Rodriguez for help with Rossi or changing his shift.  *See* Local Rule 56 (a) Statement ¶ 33.  The law requires more than a verbal conversation based on conclusory allegations to establish personal involvement.

It is well established that one written letter or grievance, which is more than the plaintiff claimed, is insufficient to establish personal involvement. "[A]llegations that an official ignored a prisoner's letter or grievance, is insufficient to establish personal liability for purposes of section 1983." *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1233 (S.D.N.Y.2003); *see Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *see also, Voorhees v. Goord,* No. 05 Civ.

1407, 2006 WL 1888638, *5 (S.D.N.Y. Feb. 24, 2006) (collecting cases); *Burgess v.*
*Morse,* 259 F.Supp.2d 240, 248 (W.D.N.Y.2003) ("[T]he fact that an official ignored
a letter alleging unconstitutional conduct is not enough to establish personal
involvement); *Thompson v. State of New York,* No. 99 Civ. 9875(GBD)(MHD), 2001
WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001) (holding that the adoption by the DOC
Superintendent of the recommendation by an investigating officer of a prisoner's
grievance cannot by itself demonstrate supervisory liability); *Ramos v. Artuz,* No.
00 Civ. 0149(LTS)(HBP), 2001 WL 840131, at *7 (S.D.N.Y. July 25, 2001) ("District
Courts have generally been reluctant to find personal involvement sufficient to
support liability where a prison official's involvement is limited to the receipt of a
prisoner's letters or complaints."); *Rivera v. Goord,* 119 F.Supp.2d 327, 344
(S.D.N.Y.2000) (holding that written complaints ignored by prison officials is
insufficient to hold supervisory defendants liable under § 1983); *Thomas v.*
*Coombe,* No. 95 Civ. 10342(HB), 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998) ("the
fact that an official ignored a letter alleging unconstitutional conduct is not
enough to establish personal involvement.").  Here the plaintiff has present no
concrete evidence in support of his claims.

These defendants were not involved in unconstitutional conduct and are
entitled to judgment as a matter of law.  These claims lack evidentiary and legal
authority.  They are all entitled to judgment as a matter of law.

D.  The Defendants Are Entitled To Qualified Immunity

Qualified immunity precludes the plaintiff from the requested relief.  The
doctrine of qualified immunity shields officials from civil suit and liability, so long

as their conduct does not violate 1) clearly established constitutional rights of which 2) every reasonable official in the defendants' positions would have known. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)(citations omitted).

The immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions . . . ." *Distiso v. Cook,* 691 F.3d 226, 240 (2d Cir. 2012)(quoting *Messerschmidt v. Millender,* 132 S. Ct. 1235, 1249 (2012). Qualified immunity balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

"Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). It applies regardless of whether the officials' error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)(Kennedy, J., dissenting)(citing *Butz v. Economou*, 438 U.S. 478 (1978)).

Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)(emphasis in original). In determining whether a defendant is immune, the court need not decide whether there is a constitutional violation before deciding the clearly established or objectively reasonable aspects of the immunity. *See Pearson v. Callhan,* 555 U.S. 223, 236 (2009).

Qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)*). The availability of the defense turns upon the "objective legal reasonableness" of the allegedly unlawful official action, "assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton, 483 U.S. 635, 639 (1987)*) (quoting *Harlow v. Fitzgerald, 457 U.S. at 818-819*). Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Anderson v. Creighton, 483 U.S. at 640*0 (emphasis added).

### 1. The Defendants Did Not Violate A Clearly Established Law

"As the Supreme Court has explained, 'a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Estate of Devine v. Fusaro*, No. 3:14-CV-01019 (JAM), 2016 WL 183472, at *5 (D. Conn. Jan. 14, 2016)(quoting *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2023 (2014)), *aff'd sub nom. Estate of Devine*, No. 16-414-CV, 2017 WL 362685 (2d Cir. Jan. 23, 2017). For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). The right

must have been recognized "not as a broad general proposition . . . but in a particularized sense so the contours of the right are clear to a reasonable official." *Reichle, Jr. v. Howards*, 132 S. Ct. 2088, 2094 (2012). "This clearly-established standard protects the balance between vindication of constitutional rights and government officials' effective performance . . . by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for money damages." *Id.* at 2093.

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (quoting *al–Kidd, supra,* at 742). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis in original)(quoting *al–Kidd, supra,* at 742). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004)(per curiam); *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

The constitutional question must have been "placed . . . beyond debate" in order to find the law so clearly established that an official is not entitled to qualified immunity. This Circuit has set forth criteria indicative of a clearly established right: "(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable Circuit court support the existence of the right . . . ; and (3) whether under pre-existing law a reasonable . . . official would have understood that his . .

. acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir. 1991); *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir. 2011)(internal citations omitted).

No authority of this Circuit or the Supreme Court calls into question the conduct of Rossi.  He did not cook pork in the common fare oven, used for Muslim meals.  *See* Local Rule 56 (a) Statement ¶ 34.  There is no evidence to support conduct by Rossi that clearly established as unlawful.

No authority of this Circuit or the Supreme Court calls into question the conduct of Legassey.  Legassey he investigated and determined that the plaintiff's conduct compromised safety and security.  There is nothing that would preclude him from having discretion or put him on notice that his conduct was unlawful.  He is entitled to qualified immunity.

No authority of this Circuit or the Supreme Court calls into question the conduct of Rivera.  There is no evidence that he was involved with the plaintiff's transfer.  There is no clearly established law that would put him notice that his actual conduct was unlawful.

The fact presented by the plaintiff against former CFSS Oliver, Osle, Williams, Rodriguez and Johnson does not rise to the level of a constitutional violation.  Vicarious liability is inapplicable to § 1983 suits, to prevail under the statute, a plaintiff must show that each defendant, through the official's own individual actions, violated the Constitution.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (*per curiam* ) (requiring "more than the linkage in the prison chain of command").  The claims lack factual support to satisfy the factors

outlined in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) that are outlined and discussed above.

Therefore, none of the defendants can be said to have violated a clearly established right.  The rights' contours were not sufficiently definite that any reasonable official in the defendants' positions would have understood that he was violating them.  *See Estate of Devine*, 2016 WL 183472, at *5.

> 2.  Defendants Were Objectively Reasonable.

Qualified immunity attaches when it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, that is, whether officers of reasonable competence could disagree as to the lawfulness of such conduct.  *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010).  "[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability."  *Ziglar v. Abbasi*, — S. Ct. —, No. 15-1358, 2017 WL 2621317, at *24 (U.S. June 19, 2017). The defendants' conduct was objectively reasonable.  They were not required to know "what a lawyer would learn or intuit from researching case law, but [only] what a reasonable person in the defendant's position should know about the constitutionality of the conduct."  *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012)(quotations omitted).  They acted reasonably given the status of the law. The actual conduct of each of the defendants was objectively reasonable.

CFSS Rossi was objectively reasonable.  He was not satisfied with the plaintiff's work.  He gave him feedback and did not see any improvement. Although the plaintiff could have received a bad work evaluation Rossi decided

not to issue the plaintiff a bad report.  The apologized and continued to wrongfully blame this defendant despite the fact that the other supervisors also had problems with his work.  This defendant is entitled to qualified immunity.

Captain Legassey's actual conduct is reasonable and not in violation of the plaintiff's constitutional rights.  He responded to the unit.  Listened to the plaintiff's complaints and conducted an investigation.  After speaking with the kitchen supervisors the decision was made to place the plaintiff in the restrictive housing unit base on his own conduct.  The plaintiff was upset about not going to work and acted in an unwarranted manner that compromised safety and security. His conduct was objectively reasonable.

There are no facts presented that would deem the conduct of defendant Olive as objectively unreasonable.  He listened to the plaintiff's concerns and responded by transferring the plaintiff to the second shift.  His conduct is appropriate and lawful.

There is no evidence to support involvement by defendant Rivera and Harris.  Absent evidence to the contrary both of these defendants are entitled to qualified immunity.

The assertions made by the plaintiff against defendants Osle, Johnson, Rodrigues and Williams are insufficient to overcome qualified immunity.  The plaintiff has not presented evidence that support claims that these defendants were on notice of retaliatory conduct by Rossi or his own desire to be transferred to the second shift.  The conduct of Osle, Johnson, Rodrigues and Williams does not meet the legal requirement to establish that he was objectively unreasonable.

23

In sum, a "reasonable officer *might not have known for certain* that the conduct was unlawful." *Ziglar*, 2017 WL 2621317, at *24 (emphasis added). The defendants are therefore immune from suit and any judgment for money damages. The individual-capacity claims and the individual-capacity defendants should be dismissed from the action outright.

## III. CONCLUSION

For all the foregoing reasons, the defendants respectfully request that the Motion for Summary Judgment be granted.

> DEFENDANTS
> Rivera, Legassey, Harris,
> Oliver, Rossi, Osle,
> Johnson, Rodriguez
> and Williams
>
> WILLIAM TONG
> ATTORNEY GENERAL
>
> BY:/s/ Zenobia Graham-Days
> Zenobia G. Graham-Days
> Assistant Attorney General
> Federal Bar #ct28802
> 110 Sherman Street
> Hartford, CT  06105
> Tel:  (860) 808-5450
> Fax:  (860) 808-5591
> E-Mail:Zenobia.Graham-Days@ct.gov

## CERTIFICATION

I hereby certify that on September 16, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system.  Parties may access this filing

through the Court's system.  A copy was also sent to the following by first-class

mail, postage prepaid, to:

      Kezlyn Mendez, Inmate No. 329751
      MacDougall-Walker C.I.
      1153 East Street South
      Suffield, CT 06080

                              /s/ Zenobia Graham-Days_____
                              Zenobia G. Graham-Days
                              Assistant Attorney General